Vedder Price P.C.
Nicole J. Wing, IL SBN 6291632
nwing@vedderprice.com
222 North LaSalle Street
Chicago, Illinois 60601
T: +1 312 609 7500
F: +1 312 609 5005

Attorneys for Defendant
XTECH TACTICAL, LLC, JEREMY
DEADMAN and JANE DOE DEADMAN

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| Century International Arms, Inc., | Case No. 2:18-cv-03404-GMS |
|---|---|
| Plaintiff, | **DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT** |
| v. | |
| XTech Tactical, Llc, Jeremy Deadman And Jane Doe Deadman, | |
| Defendants. | |

## INTRODUCTION

This case is about two rifle accessory products: (i) a magazine that stores and feeds ammunition into the rifle and (ii) a grip that attaches to the rifle to allow the user to hold it. Defendant XTech Tactical, LLC ("XTech") is a firearms accessory company that sells rifle magazines and grips. Plaintiff recently acquired a defunct firearms accessory company (US Palm) that had also sold magazines and grips. Plaintiff, in preparing to continue the business of US Palm, attempts to clear the market of fair competition for these products by claiming that XTech copied US Palm's products. Plaintiff, however, fails to assert sufficient allegations to state claims under the law for trade dress infringement (Count I) or unfair competition (Count II).

First, Plaintiff does not adequately allege any of the elements of a trade dress claim.

VEDDER PRICE P.C.
ATTORNEYS AT LAW
CHICAGO

DEFENDANTS' MEMORANDUM IN SUPPORT
OF MOTION TO DISMISS FIRST AMENDED
COMPLAINT 2:18-CV-03404-GMS

The First Amended Complaint ("Am. Complaint") contains only bare legal conclusions related to non-functionality—the first element of a trade dress claim. XTech is selling a magazine that has a "waffle" pattern and grooves cut into the surface—a common and popular design for a magazine that affords the user a safe, strong grip on the product as it is handled and adds strength to the product. XTech is selling a grip that is in a three-dimensional shape and has a rough texture on the surface (a decidedly insufficient trade dress description) so that the user does not lose his or her grip on the rifle. Companies fairly compete by selling products with these functional designs. To foster fair competition over similar products in the marketplace, the Lanham Act presumes that products are functional. If a plaintiff wishes to overcome that presumption, it faces a heavy burden to plead and prove *how* the asserted trade dress is non-functional. Plaintiff fails to do so.

Furthermore, Plaintiff has not adequately pleaded secondary meaning or likelihood of confusion (the final two elements of a trade dress claim) when Plaintiff does not allege it is selling the products at issue. XTech's and Plaintiffs products cannot be associated in the mind of consumers as emanating from a single source (secondary meaning), nor can consumers confuse the products (likelihood of confusion), if Plaintiff is not offering relevant products for sale.

<u>Second</u>, the Am. Complaint alleges no conduct giving rise to an unfair competition claim apart from that alleged in conjunction with the trade dress claim. These claims thus rise or fall together under the law. In addition, Plaintiff cannot allege injury or damage—required for all tort claims—when it does not allege that it is currently selling the products but, rather, that it intends to in the future. At this juncture, Plaintiff is seeking an improper advisory opinion about what would happen if Plaintiff does, indeed, begin selling US Palm's products. In any event, the state law claim must be dismissed for lack of subject matter jurisdiction if the federal claim is dismissed.

<u>Third</u>, there are intellectual property registrations (of which the Court may take

VEDDER PRICE P.C.
ATTORNEYS AT LAW
CHICAGO

- 2 -

DEFENDANTS' MEMORANDUM IN SUPPORT
OF MOTION TO DISMISS FIRST AMENDED
COMPLAINT 2:18-CV-03404-GMS

judicial notice) associated with the "BATTLEGRIP™" product that XTech sells that demonstrate that this line of products (designed and manufactured by a third party) has been for sale since 2002. According to the Am. Complaint, US Palm began selling the allegedly protected grip product in 2009. XTech cannot possibly be infringing on US Palm's products, or engaging in unfair competition, if it is selling a design that existed long before US Palm came out with its product.

Fourth, Plaintiff has not stated a claim against the individual defendants. Plaintiff has named in this lawsuit (i) one of XTech's members, Jeremy Deadman ("Mr. Deadman") and (ii) his wife ("Ms. Deadman"). Mr. Deadman is alleged to have directed the activity of XTech about which Plaintiff complains. There are no allegations against Ms. Deadman; she is included on the theory that she is a necessary party for Plaintiff to access Mr. Deadman's marital property. The claims against Mr. Deadman and Ms. Deadman fail for the same reasons as the claims against XTech.

## FACTUAL BACKGROUND

Plaintiff claims trade dress protection over two products previously sold by a company called US Palm: (i) an ammunition magazine (the "US Palm Magazine"); and (ii) a rifle grip (the "US Palm Grip," and collectively with the US Palm Magazine, the "US Palm Products"). (Am. Compl. ¶¶ 16, 23.)

The US Palm Magazine is a 30-round ammunition storage and feeding device for AK-47 rifles. (*Id*. ¶ 16.) The trade dress elements claimed by Plaintiff on the US Palm Magazine are a "waffle pattern" (i.e., three rows of five rectangular-like boxes) on the side surfaces of the product and "treads" (i.e., dozens of tiny grooves cut into the plastic) on the side surfaces of the product. (*Id*. ¶¶ 17 – 18.)

The US Palm Grip is configured to mount on AK-47 rifles. (*Id*. ¶ 23.) The trade dress elements claimed by Plaintiff on the US Palm Grip are the shape and pattern of the product. (*Id*.) Plaintiff's description of the shape is that it is three-dimensional. (*Id*. ¶ 25.) Plaintiff's description of the pattern is that it is of a "random speckled surface." (*Id*.)

Vedder Price P.C.
Attorneys at Law
Chicago

- 3 -

DEFENDANTS' MEMORANDUM IN SUPPORT
OF MOTION TO DISMISS FIRST AMENDED
COMPLAINT 2:18-CV-03404-GMS

According to the Complaint, US Palm hired a company called Molded Devices to manufacture the US Palm Products. (*Id.* ¶ 36.) US Palm sold the US Palm Products from 2009 to sometime in 2017. (*Id.* ¶¶ 21, 24, 38.) In early 2017, US Palm faced "financial difficulties" and was unable to pay Molded Devices for inventory. (*Id.* ¶¶ 38–39.) US Palm canceled its trademark on its name (Ex. 1[1]), reasonably inferring that it ceased operations.

Plaintiff is a large, international firearms manufacturer and importer. (*Id.* ¶ 14.) In March 2018, Plaintiff acquired the assets of US Palm. (*Id.* ¶ 30.) At that time, Plaintiff took possession of US Palm's remaining inventory of the US Palm Products. (*Id.* ¶ 31.) Since that time, Plaintiff has made preparations to sell the US Palm Products, including engaging a manufacturer to make molds for the products (*id.* ¶ 32), but Plaintiff does not allege it has ever sold the products.

XTech is a limited liability company organized in Arizona that manufactures and sells firearms accessories. (*Id.* ¶¶ 6, 11.) Mr. Deadman is XTech's "primary owner"[2] and its Director of Sales and Marketing. (*Id.* ¶¶ 7–8.) Ms. Deadman is named as a defendant based solely on allegations that Mr. Deadman acted at all times, on behalf of his marital community. (*Id.* ¶ 4.) The Am. Complaint contains no allegations regarding any conduct on the part of Ms. Deadman. Unsurprisingly, being in the same business as US Palm was, XTech also sells rifle magazines and grips. (*Id.* ¶¶ 58, 68.) The Am. Complaint alleges that these sales are directed by Mr. Deadman. (*Id.* ¶¶ 62, 70.)

XTech manufactures and sells an AK-47 magazine that has three rows of 10 square-

---

[1] Exhibits 1 and 2 are intellectual property filings/registrations, of which this Court can take judicial notice. *See San Diego Comic Convention v. Dan Farr Prods.*, 2017 U.S. Dist. LEXIS 147547, at *8 (S.D. Cal. Sept. 12, 2017) (taking judicial notice of USPTO records and finding that such "undisputed matters of public record are generally judicially noticeable.") (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001)).

[2] The Court likely recognizes that limited liability companies are organized by membership and not ownership, but the distinction is irrelevant for the purposes of this Motion, which accepts the allegations of the Am. Complaint as it must for a Rule 12(b)(6) motion.

VEDDER PRICE P.C.
ATTORNEYS AT LAW
CHICAGO

- 4 -

DEFENDANTS' MEMORANDUM IN SUPPORT
OF MOTION TO DISMISS FIRST AMENDED
COMPLAINT 2:18-CV-03404-GMS

like boxes on the side surfaces of the product and dozens of grooves on the front and back of the product (the "XTech Magazine").  (*Id.* ¶ 58.)  XTech also sells a rifle grip that is shaped to conform to a human hand and has a rough texture on its surface.  (*Id.* ¶ 68.)  This grip clearly bears the logo "TD" (*id.*, displaying image of grip), and the website referenced by Plaintiff in the Am. Complaint states that the grip is manufactured, trademarked and patented (in one aspect) by a company called TangoDown (the "TangoDown Grip," and collectively with the XTech Magazine, the "Accused Products").  These website materials referenced in the Am. Complaint, and TangoDown's trademark and patent registrations on the TangoDown Grip (*see* Ex. 2 (and fn1, *supra*)) make clear that XTech is not the manufacturer of the grip but, rather, a dealer of TangoDown's product.

Plaintiff's causes of action address only these Accused Products, alleging that the Defendants are committing trade dress infringement and unfair competition by selling these two Accused Products.[3]  Plaintiff has already attempted to re-plead its allegations in a second complaint, yet Plaintiff has not been able to state a claim for either of these causes of action.  Therefore, the Am. Complaint should be dismissed with prejudice.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted).  A plaintiff cannot rely on mere labels and conclusions, or a formulaic recitation of the elements of a claim, to support its claims.  *Bell Atlantic v. Twombly*, 550 U.S. 540, 555 (2007). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).  "For a complaint to

---

[3] The Am. Complaint contains numerous allegations about Molded Devices and US Palm products allegedly retained and sold by Molded Devices.  These are irrelevant allegations because Molded Devices is a non-party to this suit, and the only products alleged in the causes of action are the Accused Products.

VEDDER PRICE P.C.
ATTORNEYS AT LAW
CHICAGO

- 5 -

DEFENDANTS' MEMORANDUM IN SUPPORT
OF MOTION TO DISMISS FIRST AMENDED
COMPLAINT 2:18-CV-03404-GMS

survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).  In other words, the complaint must contain enough factual content "to raise a reasonable expectation that discovery will reveal evidence" of the claim. *Twombly*, 550 U.S. at 556.

## ARGUMENT

### I. PLAINTIFF'S TRADE DRESS INFRINGEMENT CLAIM FAILS BECAUSE PLAINTIFF HAS FAILED TO PROPERLY PLEAD THE THREE ELEMENTS OF THE CLAIM

The Am. Complaint suffers a fatal deficiency in pleading on each of the three elements of a trade dress claim.  Those elements are (1) that the claimed trade dress is non-functional, (2) that it owns protectable trade dress in a clearly articulated design or combination of elements that has acquired secondary meaning and (3) that Defendants' product creates a likelihood of consumer confusion.  *Art Attacks Ink, LLC v. MGA Entm't Inc.*, 581 F.3d 1138, 1145 (9th Cir. 2009).

#### (a) Plaintiff Has Not Sufficiently Alleged Non-Functionality

Pleading and proving non-functionality is element one of a trade dress claim.  *Id.* at 1145.  There "exists a fundamental right to compete through imitation of a competitor's product." *Tie Tech, Inc. v. Kinedyne Corp.*, 296 F.3d 778, 785 (9th Cir. 2002).  Thus, mere imitation of another product is not sufficient to allege a Lanham Act violation.  Instead the Lanham Act requires, among other things, that plaintiffs plead and prove that the alleged trade dress is "non-functional." *Id.*; 15 U.S.C. § 1125(a)(3).

Non-functionality means "that the product feature serves no purpose other than identification." *Disc Golf Ass'n, Inc. v. Champion Discs, Inc.*, 158 F.3d 1002, 1007 (9th Cir. 1998). 15 U.S.C. § 1125(a)(3) "imposes a presumption of functionality." *Secalt S.A. v. Wuxi Shenxi Constr. Mach. Co.*, 668 F.3d 677, 683 (9th Cir. 2012).  As a result, a plaintiff, "as the one who seeks to establish trade dress protection, must carry the heavy burden of

VEDDER PRICE P.C.
ATTORNEYS AT LAW
CHICAGO

- 6 -

DEFENDANTS' MEMORANDUM IN SUPPORT
OF MOTION TO DISMISS FIRST AMENDED
COMPLAINT 2:18-CV-03404-GMS

showing that the [claimed trade dress] is not functional, for instance by showing that it is merely an ornamental, incidental, or arbitrary aspect of the device." *Id.*

Plaintiff's Am. Complaint makes a superficial, conclusory attempt to plead non-functionality, but still falls short of carrying this heavy burden. Simply put, Plaintiff must allege more than the legal conclusion that the alleged trade dress is non-functional. Instead, a plaintiff is required "to allege *how* a trade dress is non-functional." *Deckers Outdoor Corp. v. Fortune Dynamic Inc.*, 2015 U.S. Dist. LEXIS 188274, at *12 (C.D. Cal. May 8, 2015).

In *Deckers*, the plaintiff (the UGG® boots manufacturer) alleged that the defendants infringed the trade dress of the UGG® Bailey Button boot design. *Id*. at *1–3. The plaintiff alleged that the elements of its trade dress design were non-functional. *Id*. at *3. In response, the defendants filed a motion to dismiss arguing that the plaintiff failed to plead "facts supporting that the Bailey Button Boot Trade Dress is non-functional." *Id*. at *12. The plaintiff countered that its description of the trade dress as issue "implicitly pleads non-functionality because it describes an overall aesthetic look of a boot." *Id*. The *Deckers* court rejected this argument and was "persuaded by the approach of district courts that require plaintiffs to allege *how* a trade dress is non-functional." *Id*. (emphasis in original) (collecting cases).

The *Deckers* court granted the motion to dismiss, finding that the "[p]laintiff's conclusory statement of non-functionality fails to sufficiently allege the element." *Id*. at *13. *See also AccuImage Diagnostics Corp. v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 949 (N.D. Cal. 2003) (granting motion to dismiss trade dress infringement claim and finding that plaintiff did not "plead sufficient facts for the court to determine whether the alleged trade dress is non-functional"); *Glassybaby, LLC v. Provide Gifts, Inc.*, 2011 U.S. Dist. LEXIS 60306, at *8 (W.D. Wash. June 6, 2011) (granting a motion to dismiss trade dress infringement claim and holding that plaintiff "must plead and prove with at least some detail what the purported design is and how it is non-functional").

Here, just as in *Deckers, AccuImage and Glassybaby*, Plaintiff has not plead sufficient facts to explain *how* its asserted trade dress is non-functional. Instead, Plaintiff has inserted boilerplate legal conclusions that the elements of the magazine and rife grip trade dress are "not functional" and that the respective product designs are "distinctive." (Am. Compl. ¶¶ 20, 27.) These bald conclusions are not sufficient to allege a trade dress claim. Plaintiff's pleading failure is for good reason—the items <u>are</u> functional. The *Deckers* court, in dismissing the complaint, noted the clear utilitarian function of some of the elements of the alleged trade dress of the boots, such as buttons and overlapping flaps. *Deckers Outdoor Corp.*, 2015 U.S. Dist. LEXIS 188274, at *13.

The functionality here is just as obvious as it was in *Deckers*. The waffle pattern and treads on the US Palm Magazine, among other things, make the product easier and safer for a rifle user to hold and bolsters the strength of the product. (Am. Compl. ¶ 16.) With regard to the US Palm Grip, the shape conforms to a human hand holding the rifle, and the texture guards against the product slipping out of the user's hand. (*Id.* ¶ 23.) *See Apple Inc. v. Samsung Elecs. Co.*, 786 F.3d 983, 991 (Fed. Cir. 2015) (applying Ninth Circuit law and observing that "[a] trade dress, taken as a whole, is functional if it is in its particular shape because it works better in this shape"). Without pleading some detail about *how* the designs could possibly be seen as non-functional, Plaintiff's Am. Complaint fails.

Plaintiff's description of the rifle grip raises another problem. Plaintiff failed to specifically define the elements that comprise the trade dress. *See Treat, Inc. v. Dessert Beauty*, 2006 U.S. Dist. LEXIS 74476, at *14 (D. Or. May 5, 2006). Only if a plaintiff does so "can the court and the parties coherently define exactly what the trade dress consists of and determine whether the trade dress is valid and if what the accused is doing is an infringement." *Id*. A plaintiff is required to clearly articulate its claimed trade dress to give a defendant sufficient notice. *Sleep Sci. Partners v, Lieberman*, 2010 U.S. Dist. LEXIS 45385, at *7 (N.D. Cal. May 10, 2010).

The Am. Complaint alleges the claimed trade dress with only the general and amorphous description that the grip is "three-dimensional" and has a "random speckled surface pattern." (Am. Compl. ¶ 25.) Such imprecise and flimsy statements are exactly the kinds of insufficient allegations that courts examining trade dress infringement claims routinely reject and dismiss. *See Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F. 3d 373, 381 (2d Cir. 1997) (holding that "focus on the overall look of a product does not permit a plaintiff to dispense with an articulation of the specific elements which comprise its distinct dress"); *Walker & Zanger, Inc. v. Paragon, Indus.*, 549 F. Supp. 2d 1168, 1175-76 (N.D. Cal. 2007) (holding plaintiff's trade dress allegations of 'rustic look,' 'weathered look,' 'architectural character' and 'Old World' fail to provide adequate notice). Indeed, it is well settled that the level of generality at which a trade dress is described indicates that that dress is "no more than a concept or idea to be applied to particular products" and is nothing but generic. *Walker & Zanger*, 549 F. Supp. 2d at 1174.

Here, the generic description of the trade dress as a three-dimensional object with a speckled surface falls far short of Plaintiff's obligation to specifically define the elements of the trade dress. Having failed to meet this burden, Plaintiff's claims related to the rifle grip should be dismissed.

### (b) The Elements of Secondary Meaning and Likelihood of Confusion Are Improperly Pleaded When Plaintiff Does Not Allege It Is Selling the Products at Issue

Plaintiff's Am. Complaint alleges that Plaintiff is making preparations to sell the products previously marketed by US Palm, but Plaintiff does not allege that it is currently selling these products. (Am. Compl. ¶ 32.) Instead, Plaintiff alleges that products previously marketed by US Palm are still sold by third parties on the "secondary market." (*Id*. ¶ 33.) Additionally, Plaintiff alleges that has licensed the U.S. Palm Magazine trade dress to a third party in connection for magazines for air gun products. (*Id*. ¶ 34.) In other words, Plaintiff and Defendants are not even in competition (fairly or otherwise) with

respect to the Accused Products. The Lanham Act was "intended to make actionable the deceptive and misleading use of marks and to protect persons engaged in . . . commerce against unfair competition." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 767–68 (1992).

Simply put, there can be no protection under the Lanham Act when Plaintiff is not engaged in commerce with respect to the allegedly protected products. Plaintiff's claims fail on this front for the following reasons:

<u>First</u>, Plaintiff must adequately plead secondary meaning. This means that there exists a "mental association by a substantial segment of consumers and potential consumers 'between the alleged mark and a single source of the product.'" *Levi Strauss & Co. v. Blue Bell Inc.*, 778 F.2d 1352, 1354 (9th Cir. 1985) (citing 1 J. MCCARTHY, §§ 15:2 at 659, & 15:11(B) at 686); *Mercado Latino, Inc. v. Indio Prods.*, 2018 U.S. Dist. LEXIS 120147, at *15 (C.D. Cal. July 17, 2018) (finding that plaintiff failed to establish "secondary meaning" in its purported trade dress by demonstrating "that consumers associated the Asserted Trade Dress with a single source"). Plaintiff devotes much of its time in the Am. Complaint describing the US Palm Products' alleged distinctiveness, but these conclusions do not properly plead secondary meaning when Plaintiff and Defendants are not selling products that could be theoretically associated with a single source.

<u>Second</u>, Plaintiff's allegations of consumer confusion also cannot stand when it does not plead that there are products actually competing in the market about which consumers could be confused. Likelihood of confusion is the hallmark of any trade dress claim. *Polymer Tech. Corp. v. Mimran*, 37 F.3d 74, 80 (2d Cir. 1994); *see also Nabisco, Inc. v. Warner-Lambert Co.*, 220 F.3d 43, 45 (2d Cir. 2000) (trademark infringement claim requires proof that use is likely to confuse consumers). The Accused Products are the only products from the Am. Complaint that are available to consumers. There are no products sold by Plaintiff with which to confuse the Accused Products.

Plaintiff's trade dress claim is simply not actionable. Plaintiff cannot bring a trade dress infringement claim without alleging that Plaintiff is selling the products in the marketplace and competing with Defendants for customers. Trade dress cases are difficult to prove, and the plaintiffs that prevail do so because they have an iconic protected product that they are actually selling. *See GMC v. Let's Make a Deal*, 223 F. Supp. 2d 1183, 1196 (D. Nev. 2002) (involving GMC's sale of the unique and ornamental design of the Hummer vehicle); *Coca-Cola Co. v. Rods Roadhouse Cafe*, 1991 U.S. Dist. LEXIS 13599, at *2 (E.D. Penn. Sept. 26, 1991) (recognizing The Coca-Cola Company's trade dress in the iconic bottle it sells); *Ferrari S.p.A. Esercizio Febbriche Automobili e Corse v. McBurnie*, 1989 U.S. Dist. LEXIS 13442, at *25 (S.D. Cal. June 5, 1989) (involving sales of Ferrari's Daytona Spyder); *The Time Inc. Magazine Co. v. Globe Commc'ns Corp.*, 712 F. Supp. 1103, 1111 (S.D.N.Y. 1989) (finding trade dress protection over the long-sold *People* magazine cover). But, here, we have a case in which the parties are not even competing for customers to purchase the products at issue. There is no case.

## II. PLAINTIFF'S UNFAIR COMPETITION CLAIM IS SIMILARLY FLAWED

Plaintiff alleges that the same conduct gives rise to both of the claims it asserted. Indeed, Plaintiff's unfair competition claim is based on identical allegations when compared to its trade dress infringement claim—namely the sale by XTech of the Accused Products and authorization of these sales by Mr. Deadman. (*Compare* Am. Compl. ¶¶ 81, 84 *with* ¶¶ 89, 91.) While the common law doctrine of unfair competition "encompasses several tort theories," here, Plaintiff relies on a "palming off" theory which alleges a misrepresentation as to the source of a product. *Fairway Constructors, Inc. v. Ahem*, 193 Ariz. 122, 124 (App. 1998).

Thus, Plaintiff's unfair competition claim must rise or fall along with Plaintiff's trade dress misappropriation claim. *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 1984 U.S. Dist. LEXIS 22289, at *2 (D. Ariz. Oct. 31, 1984) (noting that claims of trade dress infringement under the Lanham Act or common law unfair competition require the court to apply the

Vedder Price P.C.
Attorneys at Law
Chicago

- 11 -

DEFENDANTS' MEMORANDUM IN SUPPORT
OF MOTION TO DISMISS FIRST AMENDED
COMPLAINT 2:18-CV-03404-GMS

same analysis); *see also Fairway Constructors*, 193 Ariz. at 124 (finding that a common law unfair competition claim requires the allegation of confusion in the marketplace). As a result, Plaintiff's unfair competition claim should be dismissed for the same reasons as the trade dress claim, as discussed above. *See, e.g. Lininger v. Desert Lodge*, 63 Ariz. 239, 247 (1945) (a claim under Arizona's common law for unfair competition is grounded on a "likelihood that prospective customers will regard appellee's business as associated with appellant").

As an additional basis for dismissal, the fact that Plaintiff has not alleged that it is selling the allegedly protected products is fatal to the unfair competition claim for another reason not discussed above. Plaintiff cannot allege injury or damage at this time by Defendants' alleged conduct if it is not in competition with Defendants with respect to the Accused Products. *See Missud v. Oakland Coliseum Joint Venture*, 2013 U.S. Dist. LEXIS 29915, at *62 (N.D. Cal. Mar. 5, 2013) (holding that plaintiff failed to state a tort claim "because it alleges no injury or damages.").

At most, Plaintiff seeks an opinion about whether it could have claims against Defendants if Plaintiff decides to sell the US Palm Products in the future. Such an opinion would be advisory and is not permitted. *Flast v. Cohen*, 392 U.S. 83, 96 (1968) ("[T]he oldest and most consistent thread in the federal law of justiciability is that the federal courts will not give advisory opinions.") (quoting C. WRIGHT, FEDERAL COURTS 34 (1963)); *O'Dowd v. UNUM Life Ins. Co. of Am.*, 2006 U.S. Dist. LEXIS 73246, at *7 (D. Ariz. Oct. 6, 2006) ("The Court will not render advisory opinions.") (citing *Dream Place v. Cty. of Maricopa*, 384 F.3d 990, 999 (9th Cir. 2004)).

Finally, Plaintiff's pendant jurisdiction fails if its federal trade dress claim is dismissed.

### III. BOTH CLAIMS PERTAINING TO THE RIFLE GRIPS MUST BE DISMISSED BECAUSE THE TANGODOWN GRIP FAR PREEXISTS THE US PALM GRIP

The rifle grip products should not be at issue in this case. The "BATTLEGRIP™" line of grips has been for sale to consumers since at least 2002. (*See* BATTLEGRIP Trademark Registration, of which the Court can take judicial notice, attached hereto as Ex. 2.) US Palm began selling its grip product in 2009. If there was any copying, it was US Palm that copied TangoDown, not the other way around.

In the Am. Complaint, Plaintiff calls the product "XTech Grip" (Am. Compl. ¶ 68)—likely an effort to insinuate that the product belongs to XTech. But, the image in the Am. Complaint clearly bears the "TD" logo. (*Id.*) In addition, the Court can consider materials Plaintiff references in the Am. Complaint,[4] and Plaintiff references the sales website of XTech, which shows:



---

[4] *See Sgro v. Danone Waters of N. Am., Inc.*, 532 F.3d 940, 942 n.1 (9th Cir. 2008) (finding it proper to consider disability benefits plan referenced in complaint); *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (in ruling on a motion to dismiss a court may examine documents of undisputed authenticity referenced in complaint).

This website screenshot informs us not only that the accused grip belongs to TangoDown, but that TangoDown is the company with registered intellectual property rights in the grip. Indeed, the website removes any doubt as to the origin of the rifle grip product when it states that the "BG-AK is made of the same durable material as TangoDown's® entire BATTLEGRIP® line and offer similar TD Inc. signature features" including the "patented internal storage for essential spare parts or optic batteries." The website also states that "TangoDown® and BATTLEGRIP® are registered trademarks of TangoDown, Inc."

The Court may take judicial notice of the fact that TangoDown trademarked the "BATTLEGRIP™" name on July 28, 2009, and patented the storage feature of the "BATTLEGRIP™" products on July 17, 2007. (*See* Patent No. 7,243,454 B1, Ex. 2.) The patent application states that TangoDown first placed the products into commerce in 2002. (*Id.*) These undisputed and public facts make clear that TangoDown, and not Plaintiff, was the first to market the design of the TangoDown Grip. As a result, Plaintiff cannot prosecute any trade dress infringement or unfair competition claims based upon Defendants' sale of the TangoDown Grip.

## IV. PLAINTIFF'S CLAIMS AGAINST MR. DEADMAN AND MS. DEADMAN SHOULD BE DISMISSED

As noted above, the Am. Complaint alleges that Mr. Deadman is XTech's "primary owner" and its Director of Sales and Marketing. (Am. Compl. ¶¶ 7–8.) Based on these roles, the Am. Complaint alleges that Mr. Deadman directed XTech's sales of the Accused Products (*id*. ¶¶ 62, 70), and thus asserts identical causes of action against both XTech and Mr. Deadman. The identical claims for trade dress infringement and common law unfair competition brought against Mr. Deadman fail for the exact same reasons that claims fail against XTech.

Ms. Deadman is named as a defendant based solely on allegations that Mr. Deadman acted, at all times, on behalf of his marital community. (*Id.* ¶ 4.) The marital community,

VEDDER PRICE P.C.
ATTORNEYS AT LAW
CHICAGO

- 14 -

DEFENDANTS' MEMORANDUM IN SUPPORT
OF MOTION TO DISMISS FIRST AMENDED
COMPLAINT 2:18-CV-03404-GMS

in Arizona, is a separate entity apart from the husband and wife. *Mortensen v. Knight*, 81 Ariz. 325, 330-31 (Sup. Ct. 1956). Ms. Deadman is included only pursuant to this doctrine, and she is not a necessary party under these circumstances. Also, once again, any claims against Ms. Deadman fail for the exact same reasons that claims fail against XTech.

## CONCLUSION

For all of the foregoing reasons, Defendants XTech Tactical, LLC, Jeremy Deadman and Jane Doe Deadman, respectfully request that the Court grant the Defendants' Rule 12(b)(6) motion to dismiss with prejudice, considering that Plaintiff has already amended its complaint and, presumably, expended its best efforts to re-plead sustainable claims.

Dated: December 20, 2018

Respectfully submitted,

VEDDER PRICE P.C.

By: */s/ Nicole J. Wing*
    Nicole J. Wing

Attorneys for Defendants
XTECH TACTICAL, LLC, JEREMY DEADMAN and JANE DOE DEADMAN

## CERTIFICATION PURSUANT TO LOCAL RULE 12.1

Plaintiff filed its Am. Complaint on November 29, 2018. (Dkt. No. 24). Plaintiff filed the Am. Complaint in response to certain legal and factual decencies raised by counsel for Defendants during the parties' telephonic meet-and-confer conference held pursuant to L.R.Civ. 12(c).

On December 14, 2018, defense counsel informed Plaintiff's counsel that Defendants still intended to file a Rule 12(b)(6) motion to dismiss, and stated the grounds for said motion. The grounds were substantially the same as they were when the parties had previously met and conferred. Defense counsel stated that "[s]ince we have already discussed these matters and the amended complaint appears to contain plaintiff's best efforts to re-plead, I do not know if a call is necessary." Plaintiff's counsel agreed that a call was not necessary and stated that counsel's exchange of e-mails constituted a sufficient meet-and-confer pertaining to the First Amended Complaint.

Dated: December 20, 2018                         VEDDER PRICE P.C.


By: */s/ Nicole J. Wing*
    Nicole J. Wing

Attorneys for Defendants
XTECH TACTICAL, LLC, JEREMY
DEADMAN and JANE DOE DEADMAN

VEDDER PRICE P.C.
ATTORNEYS AT LAW
CHICAGO

DEFENDANTS' MEMORANDUM IN SUPPORT
OF MOTION TO DISMISS FIRST AMENDED
COMPLAINT 2:18-CV-03404-GMS

# CERTIFICATE OF SERVICE

I hereby certify that on December 20, 2018, I electronically filed the foregoing ***DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT*** with the Clerk of the Court using the CM/ECF system which will send notifications of such filing to all registered attorneys of record.

*/s/ Nicole J. Wing*

VEDDER PRICE P.C.
ATTORNEYS AT LAW
CHICAGO

DEFENDANTS' MEMORANDUM IN SUPPORT
OF MOTION TO DISMISS FIRST AMENDED
COMPLAINT 2:18-CV-03404-GMS