**GREENBERG TRAURIG, LLP**
ATTORNEYS AT LAW
SUITE 700
2375 EAST CAMELBACK ROAD
PHOENIX, ARIZONA 85016
(602) 445-8000

Michael T. Liburdi, SBN 021894
E. Jeffrey Walsh, SBN 009334
liburdim@gtlaw.com
walshj@gtlaw.com
**GREENBERG TRAURIG, LLP**
2375 E. Camelback Road, Suite 700
Phoenix, AZ 85016
Tel: (602) 445-8000
Fax: (602) 445-8100

Stephen A. Mendelsohn, (*Admitted Pro Hac Vice*)
mendelsohns@gtlaw.com
**GREENBERG TRAURIG, LLP**
5100 Town Center Circle, Suite 400
Boca Raton, FL 33486
Tel: (561) 955-7600
Fax: (561) 338-7099

*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Century International Arms, Inc., <br><br> Plaintiff, <br><br> vs. <br><br> XTech Tactical, LLC; Jeremy Deadman; Jane Doe Deadman, <br><br> Defendants. | Case No. 2:18-cv-3404-GMS <br><br> **PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT** <br><br> (Assigned to Hon. G. Murray Snow) |

BOC 37520849v3

Plaintiff, Century International Arms, Inc. ("Century") for its opposition to Defendants XTech Tactical, LLC ("XTech") and Jeremy Deadman and Jane Doe Deadman's ("Deadman") (collectively "Defendants") Motion to Dismiss First Amended Complaint ("Motion"), states:

## INTRODUCTION

This case concerns a trade dress dispute between firearms manufacturers and sellers of two accessories – an ammunition magazine and a grip – under the Lanham Act, 15 U.S.C. § 1125(a), and Arizona unfair competition common law.

Defendants' Motion to Dismiss the First Amended Complaint ("FAC") should be denied. The FAC sufficiently pleads the elements of a federal trade dress infringement claim and an Arizona common law unfair competition claim. Defendants rely upon irrelevant case law addressing motions for summary judgment, motions for preliminary and permanent injunctions, and trials. Defendants improperly proffer evidence outside of the FAC, and mistakenly urge this Court to make factual findings. For these and other reasons, Defendants' Motion to Dismiss should be denied.

## STATEMENT OF FACTS

Since 1984, Century has been an importer, manufacturer, refurbisher and seller of surplus AK-47 firearms, ammunitions and accessories. FAC ¶ 14. Century also manufactures and sells its products in the United States and Canada. *Id*.

A.   The Magazine

US Palm, LLC, ("US Palm") was a manufacturer and seller of firearms in the United States, and its products were both well-known and highly regarded. FAC ¶ 15. US Palm's most iconic products are the AK30 AK-47 Magazine, (the "Magazine" or "US Palm Magazine"). FAC ¶ 16. The Magazine is a "30-round ammunition storage and feeding device within or attached to a repeating firearm." *Id*. The Magazine has a "distinctive waffle and tread pattern" that is photographically displayed. *Id*. and Figure

BOC 37520849v3

1. The "distinctive waffle pattern" has certain detailed visible features on the right and left sides of the Magazine providing a "closed" three-dimensional waffle appearance. FAC ¶ 17. As for the "distinctive tread pattern," it is visible on the front and back sides of the Magazine. FAC ¶ 18. The tread pattern is comprised of grooves etched into the sides of the Magazine and is shown by a photograph. *Id*.

Century describes the Magazine's trade dress as comprised of "unique and non-functional design elements that provide the Magazine with a distinctive appearance, despite an increase in the Magazine's manufacturing costs." FAC ¶ 19. The trade dress includes radiating line patterns, rectangular like boxes and the tread pattern. The "overall visual impression" of these elements distinguishes the Magazine from other AK-47 magazines. *Id*. The Magazine's design elements are "not functional" at least for the following reasons: a) there are numerous alternative designs and design elements for competing AK-47 magazines; b) the Magazine's performance as an ammunition storage, feeding and delivery product is not affected by the waffle and tread patterns; and c) the firearm's use would be the same if there were different patterns and visual elements incorporated into the Magazine. FAC ¶ 20.

The Magazine has been part of the AK-47 market since 2009. FAC ¶ 21. US Palm continuously and extensively advertised and promoted the Magazine to potential customers, including print and online media, such as popular U.S. gun publications. *Id*. US Palm participated in gun shows and other similar events, and based upon its activities, the Magazine was "extremely popular" with consumers, as evidenced by its annual sales figures. *Id*. Consumers identify the waffle and tread patterns as US Palm-manufactured products. FAC ¶ 22.

B.  The Grip

The second iconic US Palm product is a grip configured to mount on AK-47 rifles (the "US Palm Grip" or "Grip"). FAC ¶ 23. A photograph of the Grip is shown at FAC ¶

BOC 37520849v3

23. The Grip's trade dress comprises a distinctive three-dimensional shape and a random speckled surface pattern. FAC ¶ 24. Century's trade dress constitutes the Grip's configuration, its distinctive three-dimensional shape and the random speckled pattern which indicate to consumers that US Palm is the source of the product. FAC ¶¶ 25-28. Figure 8 in the FAC shows that the grip manufactured by XTech is essentially identical to US Palm's Grip, both in shape and speckled surface. FAC ¶ 68.

C.   Century Acquires US Palm's Intellectual Property

In or about March 2017, US Palm was experiencing financial difficulties. FAC ¶ 38. To protect and maintain the Magazine and Grip's trade dress and related goodwill, on or about March 31, 2018, Century completed its purchase of US Palm's assets including all intellectual property. FAC ¶ 30. US Palm conveyed the trade dress of the Magazine and the Grip to Century, along with all of its inventory.

Century is undertaking substantial efforts to continue US Palm's business by: 1) hiring former US Palm executives/employees to assist in the manufacture and sale of the Magazine and Grip and 2) contracting with a mold manufacturer to replicate, manufacture, and sell the Magazine and Grip incorporating US Palm's trade dress. FAC ¶ 32. Century has licensed the Magazine's trade dress to Professional Training & Simulation ("PTS"). FAC ¶ 34. PTS has sold and is selling magazines incorporating the Magazine's trade dress. *Id*. Century is engaged in manufacturing the Magazine and Grip and is implementing a broad-based marketing plan for the sale of the Magazine and Grip through retailers, dealers, distributors and other buyers. FAC ¶ 35. At all times, consumers can purchase the Magazine and Grip on the secondary market. FAC ¶ 33.

D.   XTech Sells US Palm Magazines and Grips

In or about July 2013, Deadman formed defendant XTech, a manufacturer and seller of firearms accessories, FAC ¶¶ 5, 6, and he is its principal owner and Director of Sales and Marketing. FAC ¶¶ 7, 8. In addition to his role with XTech, Deadman also

- 3 -

serves as Director of Business Development for an Arizona company, Molded Devices, Inc. ("MDI"). FAC ¶¶ 5-8, 37, 42. Before US Palm sold its trade dress to Century, US Palm contracted with MDI to manufacture the Magazine according to US Palm's specifications. FAC ¶ 36. After experiencing financial difficulties, on or about May 24, 2017, US Palm was informed that MDI intended to sell at auction US Palm's molds embodying the trade dress of its Magazine and Grip. FAC ¶ 39. However, MDI did not provide US Palm with sufficient notice as required by Arizona law, A.R.S. § 33-1023(B). FAC ¶¶ 40-41.

Between May 2017 and October 2017, MDI provided units of the Magazine and Grips to XTech. FAC ¶ 44. XTech, without the prior knowledge or consent of US Palm, offered the Magazine and Grip for sale at a wholesalers' show as XTech products. FAC ¶¶ 43, 44. The products displayed by XTech bore the US Palm "US & Design" trademark. FAC ¶ 43.

On May 30, 2018, Century notified MDI, XTech, and Deadman that Century holds exclusive rights to the trade dress for the Magazine and Grip. FAC ¶ 51. MDI denied Century's claims, but admitted that it "altered" the US Palm Magazine mold for XTech's manufacture of its AK-47 magazine. FAC ¶¶ 51-54. XTech has offered and is presently offering for sale an AK-47 magazine under the product name MAG47 ("MAG47 Magazine"). *See* FAC ¶ 58 and Figure 6 (comparing the MAG47 magazine to the US Palm Magazine). In particular, the MAG47 Magazine includes: (1) the same "closed" three-dimensional waffle pattern; and (2) the same repeating rows of boxes formed by equally spaced arcuate ridges and radiating ridges enclosed by a perimeter formed by outer ridges. FAC ¶ 59. XTech modified US Palm's original mold by adding a few additional horizontal ridges to the US Palm Magazine design while keeping the same US Palm Magazine tread pattern. FAC ¶¶ 59-60.

- 4 -

BOC 37520849v3

XTech has offered and is presently offering for sale a grip under the product name BG AK Battlegrip ("XTech Grip") that is strikingly similar to US Palm's Grip and its trade dress. *See* FAC ¶ 68 and Figure 8 (XTech's infringing magazine and grip).

## ARGUMENT

A. <u>The Legal Standards for Motions to Dismiss</u>

The legal standard for a motion to dismiss under Rule 12(b)(6) requires all factual allegations to be assumed as true. *Zimmerman v. Oregon Dep't of Justice*, 170 F.3d 1169, 1171 (9th Cir. 1999). The court must draw all inferences in a liberal and favorable manner to the plaintiff. *Barker v. Riverside County Office of Ed.*, 584 F.3d 821, 824 (9th Cir. 2009).

A complaint must contain more than mere labels and conclusions, and must include factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed 2d 929 (2007). Though a complaint need not contain detailed factual allegations, it must plead enough facts for a claim to be plausible on its face. *Twombly*, 550 U.S. at 570. A facially plausible claim contains sufficient facts that allows a court to draw the reasonable inference that the defendant is liable. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). Plausibility requires more than a "sheer possibility that a defendant acted unlawfully." *Iqbal*, 556 U.S. at 678, quoting *Twombly*, 550 U.S. at 555.

Defendants impose an irrelevant legal standard. They ignore factual allegations, interject disputed evidence outside permissible bounds, mischaracterize factual allegations, seek factual findings, request determinations of the merits of the case, and add unnecessary elements not required by statute or case law.

1. Defendant's Cases are Irrelevant to Motions to Dismiss

Defendants rely upon cases that address motions for summary judgment, contested preliminary injunctions, and trials that are irrelevant at this stage. *See* Appendix A for a

- 5 -

list of cases cited by Defendants that are irrelevant to a motions to dismiss.

### 2. Defendants Fail to Justify the Need for Judicial Notice

Defendants introduce evidence outside of the FAC, and wrongly ask the court to take judicial notice.

Defendants argue for judicial notice of U.S. Patent & Trademark Office ("USPTO") filings from a non-party, TangoDown, Inc ("TangoDown"). They assert that a certain TangoDown USPTO trademark registration and patent, which they attach to their Motion, prove that TangoDown has sole rights to the US Palm Grip. Defendants rely upon two cases – *San Diego Comic Convention v Dan Farr Prods.*, 2017 WL 4005149 (S.D. Cal. Sept. 12, 2017) and *Missud v Oakland Coliseum Joint Venture*, 2013 WL 812428 (N.D. CA), both of which justify the denial of Defendants' request.

In *Dan Farr Prods.*, the parties cross moved for **summary judgment** and to exclude certain evidence. *San Diego Comic Convention* 2017 WL 4005149, at *2. Both parties separately requested that the court take judicial notice of trademark registrations and dictionary terms. *Id*. at *3. A central issue in the parties' dispute was the relative strength of their trademarks. *Id*. at *12. The court granted judicial notice and held that FRE 201(b)(1), (2), provides for judicial notice of a fact if 1) the fact is not subject to a reasonable dispute and 2) it is generally known or can be accurately and readily determined from sources whose accuracy cannot be readily questioned. *Id*. at *3. The court then held that judicial notice is limited to whether certain trademarks exist, and the date(s) of their registrations. *Id*. Judicial notice was **not** to be permitted for disputed facts as to the strength of the trademarks. *Id*.

Here, Defendants seek judicial notice of disputed facts falling outside of the FAC and inappropriately ask the court to make factual findings. Also, Defendants improperly assert the alleged rights of a non-party, TangoDown, and seek a determination of those alleged trademark rights. Even if the TangoDown trademark registration and patent are

- 6 -

considered (which would be improper to do so at this stage), they do not support Defendants' facts. The TangoDown trademark registration is simply a trademark registration for the word mark "BATTLEGRIP", rather than the U.S. Palm Grip trade dress. Similarly, by Defendants' own admission, the TangoDown patent is directed to "the storage feature of the "'BATTLEGRIP™' products" (Motion at p. 14) and does not even show the US Palm Grip trade dress including the distinctive speckled surface. Neither the trademark registration nor the patent indicates that TangoDown was the first to market a grip embodying the US Palm Grip trade dress.

In *Missud*, a defendant sought judicial notice of two orders that declared plaintiff a vexatious litigant. *Missud*, 2013 WL 812428 at \*11. The plaintiff **consented** to judicial notice and the court took judicial notice of the orders. *Id*. This limited evidentiary ruling stands in contrast to Defendants' non-party disputed facts.

3.  Defendants' Incorporation by Reference Argument Fails

Defendants ask the Court to rule upon non-party TangoDown's trademark rights because Century provided a link to TangoDown's website. FAC ¶ 28, n.2. They argue that this court should review all content from TangoDown's website under the incorporation by reference doctrine. The incorporation by reference doctrine permits a defendant to introduce documentation in its motion to dismiss where it is referenced in a complaint, but not attached. *Knievel v ESPN*, 393 F.3d 1068, 1076-77 (9th Cir. 2005). Incorporation by reference requires that the plaintiff must have necessarily relied upon the documents and they must be central to its claim. *Id*.

Century's reference to TangoDown is limited to TangoDown's web statement that the US Palm Grip "became one of the most popular aftermarket improvements to the AK rifle, *ever*." FAC ¶ 28. Century referenced TangoDown's statement solely to show that consumers "recognize US Palm's trade dress in the Grip." FAC ¶ 28. Century does not rely on this factual allegation for any other purpose.

- 7 -

BOC 37520849v3

B.   The Elements of Trade Dress

The elements of a trade dress infringement and false designation of origin claim under 15 U.S.C. § 1125(a), the Lanham Act, are also well known. A plaintiff must first sufficiently define its trade dress and then allege facts showing:  1) a likelihood of confusion; 2) secondary meaning; and 3) non-functionality. *Clicks Billiards Inc. v Sixshooters, Inc.*, 251 F.3d 1252 (9th Cir. 2001). The FAC fulfills all of these elements.

1.   Century's Trade Dress is Sufficiently Identified

The FAC contains substantial detailed factual allegations that describe Century's trade dress. FAC ¶¶ 14-28. These factual allegations are enhanced by Century's inclusion of photographs of its trade dress compared to photographs of XTech's MAG47 Magazine and its grip. FAC ¶¶ 16-28, 43, 58-60.

Defendants argue that *Glassybaby, LLC v. Provide Gifts, Inc.*, 2011 WL 2218583 (W.D. Wash. June 6, 2011) dismissed a similar trade dress claim for failing to sufficiently allege trade dress elements. Contrary to Defendants' arguments, *Glassybaby* concerned a pleading that did not sufficiently identify the disputed trademark or design. *Id*. at *2 The plaintiff claimed trade dress rights in "votive candle holders" and "hand blown glass containers" without showing the designs or how they actually compared to defendant's products. *Id*. It granted leave to amend to include "at least some [design] detail." *Id*. Because of this deficiency, the court did not rule upon the sufficiency of the trade dress elements. *Id*. at *3.

Similarly, in *Treat, Inc. v. Dessert Beauty*, 2006 WL 2812770 (D. Or.May 5, 2006), the issue was whether a complaint failed to sufficiently identify the disputed trade dress. The plaintiff, without addressing any trade dress elements, vaguely described its products. *Id*. at *12. During oral argument, plaintiff's counsel was unable to identify its trade dress and that failure justified dismissal. *Id*. In *Sleep Sci. Partners v. Lieberman*, 2010 WL 1881770 (N.D. Cal. May 10, 2010), the court dismissed the complaint, with leave to

- 8 -

amend, because the trade dress lacked sufficient identification. Plaintiff did not define its trade dress as anything more than "these three marketing components taken in combination." *Id*. at *3. It also failed to allege the elements interacted to create a visual impression. *Id*. *Accuimage Diagnostics Corp. v Terarecon, Inc.*, 260 F. Supp. 2d 941 (N.D. Cal. 2003) is also inapposite as the issue was the sufficiency of the trade dress identification. In granting leave to amend, the court held that the plaintiff failed to attach as an exhibit the medical diagnostic reports that it contended comprised its trade dress, and inadequately alleged that the parties' reports were "virtually indistinguishable." *Id*. at 949. The court held that the complaint lacked sufficient detail as to the layout and appearance of the report. *Id*.

2.  Century Sufficiently Alleges Non-Functionality

The Ninth Circuit has determined that functionality is a question of fact. *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 843 (9th Cir. 1987); *Clicks Billiards*, 251 F.3d at 1258. Many of these courts also hold that functionality, because it is fact-intensive, should not be resolved by a motion to dismiss. *SCG Characters LLC v. Telebrands Corp.*, 2015 WL 4624200 (C.D. Cal. Aug. 3, 2015); *Primesource Building Products v Hillman Group Inc.*, 2015 WL 11120882 at *3 (N.D. Tex. Mar. 31, 2015); *Yeti Coolers, LLC v JDS Industries, Inc.*, 300 F. Supp. 3d 899 (W.D. Tex. 2018).

In deciding whether a product is non-functional for trade dress purposes, the focus must be on the overall visual impression that the combination and arrangement the design elements create. *Clicks Billiards*, 251 F.3d at 1259. Factors for non-functionality include: (1) whether the design has a utilitarian advantage, (2) the existence of alternative designs, (3) if advertising emphasizes the utilitarian advantage, and (4) and if the design emanates from a simple or inexpensive method of manufacture. *Disc Gold Ass'n Inc. v Champion Disc, Inc.*, 158 F.3d 1002 (9th Cir. 1998).

The FAC sufficiently pleads the non-functionality of the Magazine and Grip trade

- 9 -

dress and contains the descriptions and photographs of the Magazine and Grip trade dress. FAC ¶¶ 17-20, 23-27. It also states that these elements are "unique and aesthetic design features," that have been added despite increased manufacturing costs, and the "overall visual impression" distinguishes them from other magazines and grips. FAC ¶¶ 19, 26. Further, there are numerous alternative designs and design elements. FAC ¶¶ 20, 27. And, their performance would be the same if different design and visual elements were used. FAC ¶¶ 20, 27. These factual allegations are supported by references to the combined elements of each product.

Other courts permit a complaint to allege non-functionality in a conclusory manner, where there are sufficient facts showing secondary meaning. *Diamond Foods, Inc. v Hottrix, LLC*, 2016 WL 3880797 (N.D. CA); *Morton v Rank American, Inc.*, 812 F. Supp. 1062, 1069 (C.D. Cal. 1993); *see also*, *International Diamond Importers, Inc. v Oriental Gemco (NY), Inc.*, 64 F. Supp. 3d 494, 522 n.188 (S.D.N.Y. 2014) (where the court denied a motion to dismiss because the "specific phrase 'non-functionality' is not necessary," and there were allegations that the trade dress was "unique."). As discussed in the following section, the FAC sufficiently pleads non-functionality.

Defendants rely upon *Deckers Outdoor Corp. v Fortune Dynamics, Inc.*, 2015 WL 12731929 (C. Dist. CA), and claim that Century's allegations require greater factual detail. *Deckers Outdoor*, however, is inapposite. There, a boot manufacturer alleged five design elements that it said, without elaboration, were non-functional, and called their combined features the "Bailey Button Boot Trade Dress." *Id*. at *3, ¶ 21. The competing manufacturer argued that merely alleging the Bailey Button Boot Trade Dress, without referencing any of the four *Disc Golf* factors for non-functionality was insufficient. *Id*. The court agreed that complaint was insufficient, and then granted dismissal, with leave to replead. *Id*.

In contrast, Century fulfills the pleading requirements of *Deckers Outdoor*.

- 10 -

Century provides both a detailed description of its trade dress and alleges facts showing how their designs connect to the *Disc Golf* non-functionality factors. FAC ¶¶ 19-20, 26-27. Therefore, Century sufficiently pleads non-functionality.

      3.      Century Sufficiently Alleges Secondary Meaning and Likelihood of Confusion

            a.      Defendants Attempt to Impose an Additional Sales Element that is not Relevant or Supported by Case Law

Defendants' sole argument concerning secondary meaning and likelihood of confusion is that "Plaintiff does not allege that it is currently selling" the Magazine and Grip. Motion, p. 9. Defendants' argument is unfounded as none of the cases cited by Defendants concern trade dress claims or even the Lanham Act. Defendants' Motion attempts to insert a sales requirement into the trade dress elements. Simply put, there is no such pleading requirement.[1]

Defendants' sales arguments conveniently ignore that even if its sales requirement was an element, Century has pled that PTS has sold and continues to sell magazines incorporating the Magazine's trade dress (FAC ¶ 34) and that consumers may still purchase the Magazine and Grip on the secondary market (FAC ¶ 33). Defendants also ignore that they prevented US Palm, and now Century, from manufacturing and directly selling the Magazine and Grip. FAC ¶¶ 36-74. They gloss over the fact that Century sought to continue the manufacture and sales of the Magazine and Grip by acquiring US Palm's trade dress, and after being denied access to and use of US Palm's molds, are making substantial efforts to continue US Palm's Magazine and Grip business. FAC ¶¶ 29-35. These facts sufficiently allege Century's stake in the trade dress.

---

[1] The secondary meaning element of trade dress does encompass the mental association by consumers and "potential consumers." *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1354 (9th Cir. 1985). Actual sales are only one secondary meaning factor.

- 11 -

Because Defendants' "sales requirement" is not an element of a trade dress infringement claim, Defendants' Motion should be denied. As detailed in the following two sub-sections, Plaintiff has adequately alleged secondary meaning and likelihood of confusion to meet pleading requirements for a trade dress infringement claim.

b.  Century Sufficiently Alleges a Likelihood of Confusion

The courts identify certain factors that may cause a likelihood of confusion: 1) whether there is actual confusion; 2) defendant's intent in adopting the trade dress; 3) the similarity of the trade dress, goods, markets; and 4) the strength of plaintiff's trade dress. *Clicks Billiards*, 251 F.3d at 1265. All of these factors have been adequately plead despite Defendants' attempt to insert a sales requirement.

The FAC contains sufficient factual allegations to plausibly plead a likelihood of confusion. FAC ¶¶ 20- 28, 43-44, 49, 58- 62, and 65-74. These allegations provide facts that detail the origins of the trade dress of the products (FAC ¶¶ 20 - 25), their similarities in both appearance and in the relevant markets (FAC ¶¶ 58-60, 68), the strength of US Palm's trade dress (FAC ¶ 28), and provide examples of how defendants have actually deceived consumers as to the designation and origin of the products by copying US Palm designs and falsely marketing their products (FAC ¶¶ 43-44, 49, 61-62, 65-66, 69-74).

The courts have also held that a likelihood of confusion is a question of fact that is not amenable to motions to dismiss. *Clicks Billiards*, 251 F.3d at 1264. Further, Defendants' cases hold that a likelihood of confusion raises either an issue of fact or a mixed question of law and fact. *Levi Strauss*, 778 F.2d at 1355 (mixed question of law and fact); *Glassybaby, LLC*, 2011 WL 2218583, at *2 (question of fact not proper for motion to dismiss); *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 1984 WL 1473, at *3 (D. Ariz. Oct. 31, 1984) (question of fact except for the rare case where there is no genuine issue of material fact as framed by a motion for summary judgment).

BOC 37520849v3

          c.      Century Sufficiently Alleges Secondary Meaning

Secondary meaning is defined as the "mental association by a substantial segment of consumers and potential consumers." *Levi Strauss & Co.*, 778 F.2d at 1354. It also denotes the interplay "between the alleged mark and a single source of the product." *Id*. Intentional copying of designs may show secondary meaning. *Fuddruckers*, 826 F.2d at 844. Secondary meaning is a question of fact. *Clicks Billiards*, 251 F.3d at 1262; *Glassybaby*, 2011 WL 2218583, at *2.

The FAC contains plausible factual allegations of secondary meaning. The Magazine's distinctive waffle and tread patterns create an overall visual impression that distinguish the Magazine from other AK-47 magazines. FAC ¶¶ 17-19. Further, US Palm continuously engaged in "extensive advertising and promotional activities" for the Magazine. FAC ¶¶ 21-22. These activities made the Magazine "extremely popular with AK-47 rifle enthusiasts and hobbyists." FAC ¶ 21.

As for the US Palm Grip, its distinctive design combines its random-speckled surface pattern and three-dimensional appearance to identify US Palm (Century) as the source. FAC ¶¶ 26-27. An example of the popularity of the US Palm Grip is also provided. FAC ¶ 28.

C. <u>Plaintiff's claims of trade dress infringement and common law unfair competition do not "rise or fall" together.</u>

Under Arizona common law, a claim for unfair competition under a theory of "palming off" consists of "a false representation tending to induce buyers to believe that the defendant's product is that of the plaintiff." *Fairway Constructors, Inc. v. Ahern*, 193 Ariz. 122, 970 P.2d 954, 956 (Ct. App. 1998). While both a common law unfair competition claim and a trade dress infringement claim under the Lanham Act require allegations that there exists "a likelihood of confusion," the Arizona state law claim of unfair competition is broader in the sense that "common law imposes liability for a false

- 13 -

or misleading representation that is to the likely commercial detriment of another." *Hy Cite Corp. v. Badbusinessbureau*, 418 F. Supp. 2d 1142, 1153 (D. Ariz. 2005).

Defendant cites no authority which holds that Plaintiff's separate claims for trade dress infringement and common law unfair competition "must rise or fall" together. *See* Motion, pp. 11-12. Defendants cite to *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 1984 U.S. Dist. LEXIS 22289, at *2 (D. Ariz. Oct. 31, 1984) to bolster their point that Plaintiff's claims should be dismissed based on the FAC. However, not only is *Fuddruckers* limited to "determining whether or not one restaurant's trade dress infringes on another restaurant's trade dress[,]" making it wholly inapplicable to this matter, it was also decided at the motion for summary judgment stage where the court was unable to decide the issues of secondary meaning or likelihood of confusion because "[b]oth of these issues involve questions of fact". *Id*. at *1-2.

Defendants also cite to *Fairway Constructors*, 193 Ariz. at 124. Like *Fuddruckers*, *Fairway* does not hold that a trade dress infringement claim under the Lanham Act and a common law unfair competition claim "must rise or fall" together. Instead, *Fairway* explains that an unfair competition claim is not preempted if "it alleges elements that are qualitatively different" from claims under the Lanham Act. *See Fairway Constructors*, 193 Ariz. at 124, ¶ 8. Here, Plaintiff has adequately pled a trade dress infringement claim under the Lanham Act and a unfair competition claim under common law. As such, Defendants' Motion should be dismissed.

D.  <u>Deadman and Jane Doe Deadman are proper parties to this litigation under the Lanham Act and Arizona state law.</u>

    1.  Deadman is personally liable under the Lanham Act and under Arizona common law.

Defendants argue that the Deadman claims should be dismissed because the "trade dress infringement and common law unfair competition brought against Deadman fail for

- 14 -

BOC 37520849v3

the exact same reasons that claims fail against XTech." However, as specified above, Plaintiff states valid claims against XTech for both trade dress infringement and common law unfair competition. In addition, Plaintiff sufficiently alleges Deadman is personally liable under both the Lanham Act and Arizona unfair competition law.

Section 43(a) of the Lanham Act imposes liability on "[a]ny person who, on or in connection with any goods or services . . . uses in commerce any . . . false designation of origin, [or] false or misleading description of fact . . ., which is likely to cause confusion." 15 U.S.C. § 1125(a). An individual may be held personally liable for torts under the Lanham Act "which he authorizes or directs or in which he participates . . ." *POM Wonderful LLC v. Purely Juice, Inc.*, 362 F. App'x 577, 581 (9th Cir. 2009). In fact, "[a] corporate officer or director is, in general, personally liable for **all torts which he authorizes or directs or in which he participates**, notwithstanding that he acted as an agent of the corporation and not on his own behalf." *Coastal Abstract Serv. v. First Am. Title Ins. Co.*, 173 F.3d 725, 734 (9th Cir. 1999)(emphasis added).

Plaintiff alleges that Deadman authorized, directed, and directly participated in the following tortious conduct:

- "offering for sale an AK-47 magazine bearing the distinctive US PALM waffle and tread pattern trade dress" (FAC, ¶ 49);
- that Deadman "had access to the molds embodying US Palm's intellectual property, which included . . . the US Palm AK-47 Magazine trade dress" (FAC, ¶ 55);
- that Deadman "entered into an arrangement with Molded Devices, whereby Molded Devices allowed XTech to obtain and sell US Palm AK-47 Magazines" (FAC, ¶ 56);
- "Deadman directed and is directing XTech's manufacture and sale of the infringing MAG47 Magazine[]" (FAC, ¶ 61);
- "Deadman refuse[s] to cease and desist from selling its MAG47 Magazine" (FAC, ¶ 63); and
- "Deadman is directing XTech's sale of the infringing XTech Grip" (FAC, ¶ 70);

- 15 -

Because Plaintiff alleges sufficient bad acts to establish liability against Deadman under the Lanham Act and Arizona common law, Defendants' Motion should be denied.

2. Jane Doe Deadman is not only a proper party in this matter but a required party.

Defendants claim that Jane Doe Deadman ("Ms. Deadman") should be dismissed from this action because "[t]he martial community, in Arizona, is a separate entity apart from the husband and wife" and she "is not a necessary party under these circumstances." Motion at pp. 14-15. However, Defendants' position ignores Arizona statutory law and case law. As Defendants point out, Plaintiff alleges that Deadman "acted, at all times, for the benefit of his marital community." *See* Motion at p. 14; *see also* FAC at ¶ 4. To recover damages from the community estate of Defendant Deadman, Plaintiff is required by law to name Ms. Deadman.

Under Ariz. Rev. Stat. Ann. § 25-215: "either spouse may contract debts and otherwise **act for the benefit of the community. In an action on such a debt or obligation the spouses shall be sued jointly** and the debt or obligation shall be satisfied: first, from the community property, and second, from the separate property of the spouse contracting the debt or obligation." (Emphasis added). Further, under both the Arizona Rules of Civil Procedure and the Federal Rules of Civil Procedure "[a] person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction **must be joined as a party if . . . in that person's absence, the court cannot accord complete relief** among existing parties." Fed.R.Civ.P 19(a)(1)(A) and Ariz.R.Civ.P. 19(a)(1)(A)(emphasis added); *see also*, *Selby v. Savard*, 134 Ariz. 222, 229, 655 P.2d 342, 349 (1982) ("The Arizona rule is that the community is liable for the intentional torts of either spouse if the tortious act was committed with the intent to benefit the community, regardless of whether in fact the community receives any benefit."); *Garrett v. Shannon*, 13 Ariz. App. 332, 333, 476 P.2d 538, 539 (1970) ("The law is settled

- 16 -

in Arizona that the community property of both spouses may be liable for an intentional tort committed by one of the spouses where the intent and purpose of the activity leading to the commission of the tort was to benefit the community interests.").

Plaintiff seeks damages for intentional torts. Complete relief may not be afforded by collecting the damages from the separate property of the Defendant Deadman and since Deadman was acting for the benefit of his marital community, Plaintiff is entitled to collect damages from that community. By statute, Plaintiff is required to name Ms. Deadman in order to collect damages from the marital community and thus, Ms. Deadman is a proper and required party to this litigation. Accordingly, Defendants' Motion to Dismiss Ms. Deadman should be denied.

E.  <u>Plaintiff has sufficient alleged its claims, however, in the alternative, Plaintiff requests leave to amend the FAC as allowed under Federal Rule 15(a).</u>

Plaintiff's allegations in the FAC, taken as true, set forth valid claims for trade dress infringement and common law unfair competition as to all Defendants. However, should this Court deem otherwise, Plaintiff respectfully requests leave to amend under Fed.R.Civ.P. 15(a). While Plaintiff previously exercised its right to amend the pleadings as a matter of course and by stipulation of the parties, Plaintiff's request for leave to amend the FAC in light of Defendants' Motion is not based on bad-faith, dilatory motive or any other reason which would preclude this Court from granting Plaintiff leave to amend.

RESPECTFULLY SUBMITTED this 17th day of January 2019.

GREENBERG TAURIG, LLP

By:  /s/ Michael T. Liburdi
     Michael T. Liburdi
     E. Jeffrey Walsh
     Stephen A. Mendelsohn (*Admitted Pro Hac Vice*)
     *Attorneys for Plaintiff*

- 17 -

BOC 37520849v3

**CERTIFICATE OF SERVICE**

☒   I hereby certify that on January 17, 2019, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

By: */s/ Carolyn Smith*
      Employee, Greenberg Traurig, LLP

BOC 37520849v3