**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Century International Arms Incorporated, | No. CV-18-03404-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| XTech Tactical LLC, et al., | |
| Defendants. | |

Pending before the Court is Non-Party TangoDown, Inc.'s ("TangoDown") Motion to Quash and/or Limit Subpoena Duces Tecum. (Doc. 67.) The Motion is denied.

## BACKGROUND

Plaintiff Century International Arms, Inc. ("Plaintiff") brings this action against Defendant XTech Tactical, LLC ("XTech") and Defendant Jeremy Deadman ("Deadman") for violations of the Lanham Act and Arizona unfair competition laws. In or around 2008, Plaintiff's predecessor, US Palm, LLC ("US Palm") designed and manufactured an AK30 AK-47 Magazine ("Magazine") and AK-47 Grip ("Grip). TangoDown was employed by US Palm as an independent contractor to help design the products and create the molds.

Plaintiff later purchased all of US Palm's assets including the trade dress of the Magazine and Grip. However, US Palm's former manufacturer, led by Deadman, had illegally taken possession of the Magazine and Grip molds and provided units of the products to XTech. XTech began selling the Magazine and Grip without US Palm's authorization, which gave rise to this suit.

Defendants have asserted that TangoDown was the sole creator, and thus owner, of any intellectual property associated with the Magazine and Grip, thereby arguing that Plaintiff never owned the trade dress for either product. Consequently, as part of discovery in this matter, Plaintiff issued a subpoena to TangoDown seeking documents and information, from 2009 to present, that relate to the claims and defenses in this action. The subpoena was issued on December 1, 2019 with a response deadline for December 10, 2019.

On December 9, 2019 TangoDown's Counsel Tracy Crump ("Crump") contacted Plaintiff's Counsel Jeffrey Walsh ("Walsh") and discussed TangoDown's objections to the subpoena. Crump explained that in order to properly respond to the subpoena TangoDown would need to extract electronic files from computers and servers that are no longer in use and are being stored in a warehouse. During this conversation, Crump and Walsh agreed to allow TangoDown an additional week to ascertain the scope of responsive documents and estimate the costs of having a third-party information technology firm retrieve the electronic files. Plaintiff further agreed to cover the associated cost of using a third-party technology firm and narrowed the scope of the requested information.

The modified requests are:

1. Agreements between TangoDown and US Palm or its predecessors and affiliates for the design and manufacture of AK-47 magazines and grips.
2. Documents showing payments made by U.S. Palm or its predecessors and affiliates, and/or revenues received by Tango Down, for the design, manufacturing and sale of those products.
3. Agreements between Tango Down and XTech or its predecessors and affiliates, for the design and manufacture of AK-47 magazines and grips, and other documents showing that Tango Down "after joining forces with the company that now owns their [U.S. Palm's] AK product assets".
4. Documents showing that the grip now marketed by Tank [sic] Down is "the same grip, by the original designers, for the original molds."
5. Documents showing payments made by XTech, or its predecessors and affiliates, and/or revenues received by Tango Down, for the design, manufacturing and sale of those products.
6. Documents supporting Tango Down's claim that the AK-47 grip described in the link you attached was "one of the most popular aftermarket improvements to the AK rifle, ever. "
7. Documents showing that the "shooting public" liked the product and were "showering" Tango Down to "bring it back to the commercial market."

8. Any other marketing materials concerning the BG-AK Battlegrip.

(Doc. 67-3 at 1; Doc. 72 at 5.) However, Plaintiff and TangoDown were unable to reach an agreement and TangoDown filed this Motion.

TangoDown asserts that the subpoena is unduly burdensome, calls for the production of confidential and proprietary information, and presents impossible deadlines.

**DISCUSSION**

**I. Legal Standard**

Federal Rule of Civil Procedure 45 governs discovery of nonparties by subpoena. In pertinent part, Rule 45 dictates that courts "must quash or modify a subpoena that: (i) fails to allow a reasonable time to comply; . . . (iii) requires disclosure of privileged or other protected matter, . . . ; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A). "The party who moves to quash a subpoena bears the burden of persuasion . . . ." *Cheatwood v. Christian Bros. Servs.*, 2:16-cv-2946-HRH, 2018 WL 287389, at *2 (D. Ariz. Jan. 4, 2018) (quoting *ATS Products, Inc. v. Champion Fiberglass, Inc.*, 309 F.R.D. 527, 530 (N.D. Cal. 2015).

**II. Analysis**

**A. Undue Burden**

The scope of discovery of nonparties by subpoena is the same as that applicable to parties. *See* Fed. R. Civ. P. 45 advisory committee's notes (1970) ("The changes make it clear that the scope of discovery through a subpoena is the same as that applicable to . . . the other discovery rules"). "An objecting party must state specifically how, despite the broad and liberal construction of the discovery rules, each question is overly broad, unduly burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." *Voxpath RS, LLC v. LG Elecs. U.S.A., Inc.*, No. MC 13-004-TUC-CKJ, 2013 WL 5744045, at *4 (D. Ariz. Oct. 22, 2013).

TangoDown asserts that the requested documents "would number close to one thousand electronic files and would be stored on [] multiple hard drives in obsolete computers and serv[ers] that have been decommissioned and stored in TangoDown's

warehouse." (Doc. 67 at 3.) Accordingly, the time and effort required to retrieve the documents would be significant. Plaintiff, however, in an effort to diminish any expense or effort to be expended by TangoDown in responding to the subpoena, offered to "identify an e-discovery vendor and incur the costs." (Doc. 72 at 6.) TangoDown does not identify how long it would take to provide the files for inspecting and copying; nor has TangoDown challenged the relevancy of the requested documents. TangoDown has not provided any specific evidence to demonstrate an undue burden beyond its conclusory claim that such a burden exists.

TangoDown's conclusory assertions do not satisfy its burden of persuasion. The motion to quash will not be granted on these grounds.

**B.     Confidential and Proprietary Information**

TangoDown also argues that because it has developed magazine and grip designs that remain proprietary to TangoDown, the subpoena requests documents that may result in an "inappropriate disclosure of privileged or protected information and materials to a competitor." (Doc. 67 at 4.) Before the Court can quash a subpoena for requiring disclosures of confidential information, the subpoenaed party must show that the requested information is, in fact, confidential. *Cheatwood*, 2018 WL 684736, at *7. "Confidential commercial information is information which, if disclosed, would cause substantial economic harm to the competitive position of the entity from whom the information was obtained." *Id.*

TangoDown fails to assert any facts that would support its bare allegations that the production would result in harm or prejudice. Thus, it has not demonstrated that any of the requested information is confidential. Moreover, even if TangoDown had made such a showing, Plaintiff has asserted that it is more than willing to enter a protective order. Again, TangoDown fails to meet its burden. The motion to quash will not be granted on these grounds.

### C. Timing

Lastly, TangoDown asserts that the original ten-day deadline, even coupled with the seven-day extension, was "woefully inadequate to accomplish the physical task of finding the computers & servers, finding and searching the relevant hard drives, and then searching and compiling the relevant electronic files from those drives." (Doc. 67 at 5.) TangoDown further explains that it is in the process of preparing for the "industry's largest and most significant trade show" that runs January 20, 2020 through January 24, 2020. (Doc. 67 at 5.)

Plaintiff, however, has been willing to work with TangoDown on the timing of the production. Plaintiff agreed to an initial seven-day extension to assess the feasibility and quantity of the likely production and requested to be notified of any foreseeable difficulties in meeting the deadline.[1] TangoDown also overlooks Plaintiff's offer to pay for an e-discovery firm to help with the "finding, searching, and compiling" that comprises a significant portion of the alleged time burden. Instead of working towards a solution, TangoDown filed this Motion. In light of Plaintiff's concessions and the complete lack of evidence suggesting TangoDown even attempted to comply with the subpoena, TangoDown has not demonstrated a "woefully inadequate" timeframe.

### CONCLUSION

Because Plaintiff has failed to meet its burden to establish grounds for quashing the subpoena, its Motion is denied.

**IT IS SO ORDERED** that TangoDown's Motion to Quash and/or Limit Subpoena Duces Tecum (Doc. 67) is **DENIED** in so far as Plaintiff agrees to make the

---

[1] Walsh sent Crump an email on December 10, 2019 stating,

> I confirm that we have agreed that your client Tango Down has a one week extension to respond to the subpoena we served upon it on behalf of Century International Arms, Inc. . . . Please confirm that your client will be able to produce these documents by December 17, 2020. If you anticipate any difficulty in doing so, please give me the details as soon as possible so we can discuss how to proceed.

(Doc. 67-3 at 1.)

concessions noted in its Response (Doc. 72), being:

1. Limiting the scope of the subpoena to the modified requests restated in this Order derived from Walsh's December 10, 2019 email (Doc. 67-3 at 1);
2. Engaging and paying for a third-party e-discovery vendor to assist TangoDown in identifying the responsive electronic files; and
3. Providing TangoDown a protective protocol and reasonable time to respond.

**IT IS FURTHER ORDERED** directing Plaintiff and TangoDown to proceed as follows:

1. Plaintiff will promptly engage a third-party e-discovery vendor and cover the associated costs.
2. TangoDown will promptly provide access to any necessary hardware and/or any relevant materials for review to the third-party vendor.
3. TangoDown will have the first opportunity to review the responsive documents identified by the third-party vendor and may raise privilege objections in compliance with Fed. R. Civ. P. 45(e)(2) at that time.

Dated this 15th day of January, 2020.

_G. Murray Snow_
G. Murray Snow
Chief United States District Judge