**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Century International Arms Incorporated, | No. CV-18-03404-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| XTech Tactical LLC, et al., | |
| Defendants. | |

Pending before the Court is Defendant XTech Tactical LLC ("XTech")'s Motion for Summary Judgment. (Doc. 94.) For the following reasons, XTech's Motion is denied.[1]

## BACKGROUND

Plaintiff Century International Arms ("Century") is an international firearms manufacturer and importer. (Doc. 98 at 2.) XTech is an Arizona LLC that manufactures and sells firearms accessories. *Id.* at 1. A third company, US Palm, was also a manufacturer and seller of firearms and accessories in the United States. *Id.* at 2. Century acquired US Palm in 2018 when it began having financial difficulties, and asserts it gained rights to US Palm's assets and intellectual property through the purchase. Included in this Intellectual property was US Palm's AK30 AK-47 Magazine (the "Magazine").

Century claims that, prior to the acquisition, the manufacturer Molded Devices

---

[1] The Defendant's request for oral argument is denied because the parties have had an adequate opportunity to discuss the law and evidence and oral argument will not aid the Court's decision. *See Lake at Las Vegas Invrs. Grp., Inc. v. Pac. Malibu Dev. Corp.*, 933 F.2d 724, 729 (9th Cir. 1991).

notified US Palm it intended to sell its equipment, including a mold for US Palm's Magazine, to satisfy an unpaid balance. *Id.* at 11. Century also asserts that XTech then wrongfully gained possession of the mold. In support, they claim that Defendant Deadman is both the Director of Business Development for Molded Devices and the primary owner and director of sales and marketing for XTech. *Id.* Additionally, shortly after Molded Device's sale went forward, Century claims that XTech began displaying magazines which were "identical" to the US Palm magazine at an exposition. *Id.* In 2018, when Century learned that XTech was selling an AK-47 magazine that contained a waffle and tread pattern like the US Palm design, it brought suit, claiming trade dress protections over the US Palm magazine design. (Doc. 93 at 2.)

Both magazines have a raised grid pattern that fans toward the outside of the magazine, which the parties refer to as a "waffle" pattern. Both also have raised grooves on the front and back of the magazines, which the parties refer to as a "tread" pattern. It is this combination of features that Century claims is entitled to trade dress protection. Century claims the design is distinct from other products on the market and is part of its "extensive" marketing strategy to create a military feel to products designed for civilian commercial users. (Doc. 98 at 7). In contrast, XTech asserts these features are ubiquitous in the market, and provide grip and strength rather than merely adding aesthetic value.

There are also visible differences between the parties' designs: XTech's waffle pattern includes ten horizontal lines while US Palm's has only five, meaning the grid on XTech's product is smaller; US Palm's magazine includes a notch at the bottom where XTech's is squared off; and each displays their respective logo at the bottom of the magazine. (Doc. 93 at 5.) Century also claims, however, that the initial designs of the parties were indistinguishable, and these changes followed its early demands for protection of the design. (Doc. 98 at 13.)

XTech filed this Motion for Summary Judgment alleging that the design was not protectable trade dress because it is not unique in the AK-47 market and serves a functional purpose.

# DISCUSSION

## I. Legal Standard

The purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Parties opposing summary judgment are required to "cit[e] to particular parts of materials in the record" establishing a genuine dispute or "show[ ] that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). A district court has no independent duty "to scour the record in search of a genuine issue of triable fact[.]" *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).

"Because of the intensely factual nature of trademark disputes, summary judgment is generally disfavored in the trademark arena." *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1140 (9th Cir. 2002).

## II. Analysis

### A. Defendants Deadman and Jane Doe Deadman

The Lanham Act imposes liability on "[a]ny person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, . . . which . . . is likely to cause confusion." 15 U.S.C. § 1125. "A corporate officer or director is, in general, personally liable for all torts which he

authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf." *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1021 (9th Cir. 1985) (internal quotations omitted); *see Chase Inv. Servs. Corp. v. L. Offs. of Jon Divens & Assocs., LLC*, 748 F. Supp. 2d 1145, 1182 (C.D. Cal. 2010) (applying the same corporate liability rules to a limited liability company).

Defendant Deadman has not established that there is no genuine issue of material fact as to his status as a defendant. "A moving party may not require the nonmoving party to produce evidence supporting its claim or defense simply by saying that the nonmoving party has no such evidence." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1105 (9th Cir. 2000) (citing *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991) ("Even after Celotex it is never enough simply to state that the non-moving party cannot meet its burden at trial."). Rather, the moving party must point to some materials to demonstrate that the nonmoving party will not be able to meet its burden. *Id.* Deadman asserts "Plaintiff has failed to allege an alter ego theory or any other theory of individual liability for Jeremy Deadman and Jane Doe Deadman." (Doc. 94 at 4.) But Deadman offers no support for his contention, citing only to the First Amended Complaint, which contains several allegations of Defendant Deadman's actions and does not establish that there is no evidence such personal actions took place. Deadman has therefore failed to meet his burden by merely declaring Century has no evidence.

**B.     The Lanham Act**

The Lanham Act prohibits the use of another's trade dress in commerce in connection with any goods or services. 15 U.S.C. § 1125(a). Trade dress is "the total image, design, and appearance of a product and may include features such as size, shape, color, color combinations, texture or graphics." *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). To sustain a claim for trade dress infringement, a plaintiff "must prove: (1) that its claimed dress is nonfunctional; (2) that its claimed dress serves a source-identifying role either because it is inherently distinctive or has acquired secondary meaning; and (3) that the defendant's product or service creates a likelihood of consumer

confusion." *Id.* at 1258. XTech alleges that there is no genuine issue of material fact about each prong of the test, so the Court addresses each in turn.

### 1. Functionality

"Trade dress protection extends only to design features that are nonfunctional." *Id.* at 1258. "A product feature is functional if it is essential to the product's use or if it affects the cost or quality of the article." *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 842 (9th Cir. 1987). To determine whether a product is functional, courts weigh several, nondispositive factors: "(1) whether the design yields a utilitarian advantage, (2) whether alternative designs are available, (3) whether advertising touts the utilitarian advantages of the design, and (4) whether the particular design results from a comparatively simple or inexpensive method of manufacture." *Disc Golf Ass'n, Inc. v. Champion Discs, Inc.*, 158 F.3d 1002, 1006 (9th Cir. 1998).[2]

#### a.   Utilitarian Advantage

"A product feature need only have *some* utilitarian advantage to be considered functional." *Id.* at 1007. "[S]ome cases have even suggested that in order to establish nonfunctionality the party with the burden must demonstrate that the product feature 'serves no purpose other than identification.'" *Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1531 (9th Cir. 1992) (quoting *Keene Corp. v. Paraflex Indus., Inc.*, 653 F.2d 822, 826 (3d Cir. 1981)). Yet, "in evaluating functionality as well as the other elements of a trade dress claim, it is crucial that [courts] focus *not* on the individual elements, but rather on the overall visual impression that the combination and arrangement of those elements create." *Clicks Billiards*, 251 F.3d at 1259. As such, multiple functional items may be combined into a non-functional aesthetic whole. *Fuddruckers*, 826 F.2d at 842.

There remains a genuine issue of material fact over whether Century's trade dress has utilitarian advantage. In marketing its product, Century "appealed to their customer's desire to be seen as an 'operator' using their equipment." (Doc. 98-3 at 4.) Century also offers the declaration of Robert Anderson to assert that the features of the product are "non-

---

[2] Neither party offers evidence about the method and cost of manufacture here, so the Court considers only the first three *Disc Golf* factors below.

- 5 -

functional aesthetic design elements" which create a "combat rugged look." *Id.* Yet their advertising also states the design "provides a solid grip for the shooter during loading and unloading while providing rigid enforcement." (Doc. 92-7 at 3.) Even with this identified purpose, a jury could conclude that, although placing the waffle pattern and tread features on the magazine serves the function of allowing the user to easily handle the product, the alleged trade dress—the combination of the two features and their exact placement on the magazine—is merely aesthetic, not functional. *See Millenium Labs., Inc. v. Ameritox, Ltd.*, 817 F.3d 1123, 1130–31 (9th Cir. 2016) (finding a genuine issue of material fact over the utilitarian advantage of a graph report system where displaying the numbers and placing the graphs on the same page served the function of easy review, but the exact side by side presentation of the charts could be considered aesthetic and nonfunctional). There are thus issues of material fact concerning the utilitarian advantage of the magazine pattern that weigh against functionality.

### b. Alternative Designs

The availability of alternative designs weighs against a finding of functionality where alternative configurations exist and protection of one design will not hinder competition. *Disc Golf Ass'n*, 158 F.3d at 1008. Although they do not negate functionality, "the existence of alternative designs may indicate whether the trademark itself embodies functional or merely ornamental aspects of the product." *Talking Rain Beverage Co. v. S. Beach Beverage Co.*, 349 F.3d 601, 603 (9th Cir. 2003).

Here, a jury could conclude that alternative designs were available. XTech cites and Century repeats several examples: "a non-exclusive list of brands and/or manufacturers that make or use a tread pattern" includes the "Tango Down Arc Magazine; Amend 2 Magazine; Magpul AK Magazine; Hexmag AR Magazine; Pro Mag; Daniel Defense; Tapco; Mission First Tactical; Puf Gun; Mako Group; Hera Arms; Troy Industries; [and] Thermold." (Doc. 92-4 at 8.) A jury could find that these alternative, noninfringing grips establish that protection of Century's specific combination of patterns is aesthetic and will not hinder competitors from creating functionally equivalent products. These alternative

designs therefore weigh against summary judgment for XTech.

### c. Advertising Touting Utilitarian Elements

"If a seller advertises the utilitarian advantages of a particular feature, this constitutes strong evidence of functionality." *Disc Golf Ass'n*, 158 F.3d at 1009. A court is "not required to ignore advertising that touts functional features just because those ads may include messages—subtle or otherwise—aimed at nonfunctional features." *Talking Rain Beverage*, 349 F.3d at 604 (finding the "grip bottle" at issue was functional despite advertising touting the feature with the figurative slogan "get in control").

Here, Century's advertising weighs against a finding of nonfunctionality. The US Palm website promotes the utility of the waffle and tread features: "The unique waffle and tread design that distinguishes the US Palm magazine provides a solid grip for the shooter during loading and unloading while providing rigid enforcement." (Doc. 92-7 at 3.) Although Century asserts that the advertising reflects its marketing strategy emulating military features rather than functionality, the fact that function is emphasized outweighs this nonfunctional motivation. *See Talking Rain Beverage*, 349 F.3d at 604. Thus, this factor weighs in favor of functionality.

### d. Conclusion

Here, there are material disputes about the utilitarian advantage and alternative designs of the magazines. The advertisements for the magazine weigh in favor of functionality but cannot alone establish that there is no genuine dispute of material fact. *See Moldex-Metric, Inc. v. McKeon Prod., Inc.*, 891 F.3d 878, 887 (9th Cir. 2018) (finding that a reasonable jury could find that evidence of alternative colors for a product could outweigh evidence of some utilitarian advantage and advertised utility). Thus, there is a genuine dispute of material fact as to functionality.

### 2. Distinctiveness and Secondary Meaning

A product "is distinctive and capable of being protected if it *either* (1) is inherently distinctive *or* (2) has acquired distinctiveness through secondary meaning." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769 (1992). A mark is inherently distinctive when

it identifies the particular source of a product rather than its species or description. *Id.* at 768–69. Alternatively, a mark attains secondary meaning "when the purchasing public associates the dress with a particular source." *Fuddruckers*, 826 F.2d at 843. Secondary meaning is therefore a question of fact which requires a showing of "mental recognition in buyers' and potential buyers' minds that products connected with the symbol or device emanate from or are associated with the same source." *First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1383 (9th Cir. 1987); *Levi Strauss & Co. v. Blue Bell, Inc.*, 632 F.2d 817, 820 (9th Cir. 1980).

Here, there is a dispute of material fact because Century has provided evidence alleging XTech's intent to copy. "[E]vidence of deliberate copying is relevant to a determination of secondary meaning" and "may suffice to support an inference of secondary meaning." *Fuddruckers*, 826 F.2d at 844 (explaining that it was appropriate for the trial court to instruct the jury that they were permitted to "infer the existence of secondary meaning from a finding of intentional copying"); *see Lisa Frank, Inc. v. Impact Int'l, Inc.*, 799 F. Supp. 980, 989 (D. Ariz. 1992) (finding substantial evidence of intent to copy where an artist expressed desire to develop products that looked like the plaintiffs).

Century alleges XTech's use of the original US Palm mold establishes intent to copy. To support this claim, Century draws connections between US Palm's mold and XTech's conduct and product. They claim Defendant Deadman is both the director of business development for Molded Devices and the owner of XTech. (Doc. 94-1 at 2); (Doc. 98-7 at 2). The declaration of Timothy Self also asserts "Defendant Deadman, acting in his capacity as Molded Devices Director of Business Development, notified Century that Molded Devices now owned the molds used to manufacture US Palm Magazine." (Doc. 98-1 at 4). And, shortly thereafter, "XTech was displaying, as its own design, the US Palm Magazine on a display board." *Id.* Century claims "Molded Devices admitted that it had 'altered' the US Palm Magazine mold and was using the mold to manufacture the XTech Magazine." (Doc. 98-1 at 5.)

XTech's argument that the waffle and tread patterns are common in the industry and

cannot identify the US Palm magazine to a sufficient degree do not address or contradict these allegations about their intent. Century's evidence therefore creates a genuine dispute of material fact about the distinctiveness of the trade dress because it creates a genuine issue about XTech's intent to copy the magazine design.

### 3. Confusion

"Likelihood of confusion exists when customers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark." *Fuddruckers*, 826 F.2d at 845 (internal quotations omitted). The Ninth Circuit has "identified eight factors—called the *Sleekcraft* factors—for determining whether a defendant's use of the mark is likely to cause consumer confusion: (1) the strength of the mark; (2) the proximity of the goods; (3) the similarity of the marks; (4) evidence of actual confusion; (5) the marketing channels used; (6) the type of goods and the degree of care likely to be exercised by the purchaser; (7) the defendant's intent in selecting the mark; and (8) the likelihood of expansion of the product lines." *Gordon v. Drape Creative, Inc.*, 909 F.3d 257, 264 n.6 (9th Cir. 2018); *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979). Given the open-ended nature of this multi-prong inquiry . . . summary judgment on 'likelihood of confusion' grounds is generally disfavored." *Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1210 (9th Cir. 2012).

"As a general rule, the plaintiff in an action for trademark infringement is not required to prove the defendant's intent. However, where such intent has been shown, the 'inference of likelihood of confusion is readily drawn.'" *HMH Pub. Co. v. Brincat*, 504 F.2d 713, 720 (9th Cir. 1974) (explaining that "the alleged infringer has indicated by his actions an expectation that such confusion will indeed be created.") Proof of intent to cause confusion, therefore, effectively shifts the burden to the defendant to establish that the effort has proven unsuccessful. *Id.*

Here, evidence about the similarity of the marks, the proximity of the goods, and intent to copy creates a genuine dispute of material fact. Century claims that the two

magazines are "aesthetically identical," (Doc. 97 at 5), and, via Timothy Self's declaration, that "there was no material distinction between the US Palm Magazine and the magazine displayed for sale by XTech." (Doc. 98-1 at 5). In contrast, XTech, asserts that "the US Palm and XTech Magazines are completely different magazines," and "it is obvious that the products are different in size, shape, and design." (Doc 25-1 at 14); (Doc 94 at 12–13). The products are also both clearly in the same market for AK-47 accessories. Further, as discussed above, there is a genuine issue of fact about XTech's intent to copy the magazine design. Because there is a genuine dispute over whether XTech intentionally used US Palm's mold to create a similar product, there is also a dispute over whether these actions create an inference that consumers would be confused by the two products. There is therefore a genuine issue of material fact as to the likelihood of confusion between the two designs.[3]

### 4. Conclusion

As there are genuine disputes of material fact for each prong of the trade dress analysis, the Court declines to grant summary judgment on the trade dress claim.

### C. Arizona Unfair Competition Claim

"[T]he central tort in unfair competition at common law is known as 'palming off,' or 'passing off.'" *Fairway Constructors, Inc. v. Ahern*, 193 Ariz. 122, 124, 970 P.2d 954, 956 (Ct. App. 1998). It consists of "a false representation tending to induce buyers to believe that the defendant's product is that of the plaintiff." *Id.* XTech's Motion asserts there has been no detriment incurred by Century, and their own actions were not false or misleading. (Doc. 94 at 14.) Yet XTech offers no support for this contention. As discussed above, a moving party may not require the nonmoving party to produce evidence merely by claiming evidence does not exist. *Nissan Fire*, 210 F.3d at 1105. Such claims cannot prevail on a motion for summary judgment because they do not shift the burden to the

---

[3] Century also cites several comments from users and enthusiasts as evidence of actual confusion in the market. (Doc. 97 at 15.) These comments, however, are not accompanied by any authenticating document establishing they can be admitted at trial. *See Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011) ("unauthenticated documents cannot be considered in a motion for summary judgment.") Even absent these comments, however, a genuine issue of fact as to the confusion of the products exists.

- 10 -

nonmoving party. *Id.* Further, XTech claims that the unfair competition claim under Arizona law fails for the same reasons as the trade dress claim. As the Court has found a genuine issue of material fact in Century's trade dress claim, XTech's allegations do not demonstrate there is no genuine dispute of material fact on the Arizona law claim.

## CONCLUSION

Century's claims for trade dress and unfair competition hinge on factual disputes that must be determined by a finder of fact. Because of there are genuine issues of material fact for each claim, XTech's Motion for Summary Judgment is denied.

**IT IS THEREFORE ORDERED** that the Motion for Summary Judgment (Doc. 94) is **DENIED.**

Dated this 5th day of November, 2020.

_____
G. Murray Snow
Chief United States District Judge